UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CLAUDE E. SINGER, | : |
|                 Plaintiff, | : |
| | : |
| v. | :    No. 5:25-cv-6754 |
| | : |
| SLATE BELT MEDICAL | : |
| CENTER, NORTHAMPTON COUNTY | : |
| SHERIFF'S OFFICE, NORTHAMPTON | : |
| COUNTY PRISON, and SOBER HEALTH | : |
| CARE GROUP, | : |
|                 Defendants. | : |

**MEMORANDUM**
Complaint, ECF No. 1 – Dismissed

**Joseph F. Leeson, Jr.**                                                                         January 20, 2026
**United States District Judge**

      *Pro Se* Plaintiff Claude E. Singer brings this civil action pursuant to 42 U.S.C. § 1983 and the Americans with Disabilities Act ("ADA"), naming as Defendants Slate Belt Medical Center, the Northampton County Sheriff's Department, the Northampton County Prison, and Sober Health Care Group. He also seeks leave to proceed *in forma pauperis*. For the following reasons, the Court grants Singer's Motion for Leave to Proceed *In Forma Pauperis*, *see* ECF No. 2, dismisses his Complaint, *see* ECF No. 1, on statutory screening pursuant to 28 U.S.C. § 1915, and provides him an opportunity to file an amended complaint.

**I.    BACKGROUND**[1]

      Singer states that he was "in rehab" at Slate Belt Medical Rehab ("Slate Belt") in Northampton County from August 2024 to December 2024. Compl. at 4. He asserts that when

---

[1]    The facts set forth in this Memorandum are from Singer's Complaint, *see* ECF No. 1. The Court adopts the pagination assigned to the Complaint by the CM/ECF docketing system.

his "health insurance lapsed," Slate Belt told him that he "had to leave." *Id.* He contacted his insurer and was told that Slate Belt "could not make [him] leave and that [his] insurance would be active again starting January 2025." *Id.* He then "refused to leave Slate Belt," after which "someone there found out [that he] had a bench warrant for a DUI and called in to have [him] arrested," also making "a false claim that [Singer] threatened to shoot another person in the head." *Id.* Singer was arrested "on the bench warrant" at Slate Belt on January 1, 2025, by an unnamed Northampton County Sherriff's Deputy. *Id.* He was "taken out of Slate Belt Medical Center in a wheelchair and was put in the back of a patrol car where [he] could not move and was in pain the entire time [that he] was transported to Northampton County Prison." *Id.*

Singer alleges that when he arrived at Northampton County Prison, he "was refused a wheelchair or walker and forced to walk approximately 200 yards into the prison without assistance" by unnamed persons. *Id.* at 4–5. He "was not given a medical evaluation," at the prison and heard unnamed corrections officers say that "someone named Lauren from medical said 'fuck him put him in a cell.'" *Id.* at 5. An unspecified person provided him with a walker "long enough to get to a cell and it was then taken away again." *Id.* After he spent some time in bed, he "got up to use the toilet, . . . us[ing] the walls to guide [him]self," but when he stood up again from the toilet and tried to pull his clothes on, he "fell and hit [his] head on the wall knocking [him]self unconscious." *Id.* When he awoke there was "a puddle of blood coming from his head," so he called for assistance, and the officer who responded then "called medical and 911." *Id.* He waited "about another hour" for medical assistance, then "ended up passing out again and medical was still not there." *Id.* He woke up in the hospital, where he received nine stitches in his head. *See id.* When he was returned to Northampton County Prison, "this time they had the required wheelchair waiting for [him]," and he was "taken to medical

housing." *Id.* While there, he "fell a second time onto [his] wheelchair[,] hit under [his] arm and got sever[e] bruising and internal bleeding," but was "denied anything for pain." *Id.*

Singer indicates an intent to bring constitutional claims pursuant to 42 U.S.C. § 1983 ("Section 1983") and asserts that the Defendants' conduct violated his rights under the ADA. *Id.* at 1, 7. He seeks monetary damages. *Id.* at 7.

## II.  LEGAL STANDARD

The Court grants Singer leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[2] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss Singer's Complaint if it fails to state a claim. The Court applies the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), that is, whether a complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). At this stage, the Court accepts the facts alleged in the *pro se* Complaint as true, draw all reasonable inferences in the Plaintiff's favor, and "ask only whether that complaint, liberally construed, contains facts sufficient to state a plausible claim." *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (cleaned up), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *See Iqbal*, 556 U.S. at 678.

As Singer is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239,

---

[2]   Because Singer is incarcerated, he must pay the filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

244–45 (3d Cir. 2013)). The Court "appl[ies] the relevant legal principle even when the complaint has failed to name it." *Id.* (quoting *Mala*, 704 F. 3d at 244). However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F. 3d at 245). An unrepresented litigant "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants." *Id.*

### III.     ANALYSIS

#### A.     Constitutional Claims under Section 1983

Singer indicates an intent to bring claims under Section 1983, the vehicle by which federal constitutional claims may be brought in federal court. *See* Compl. at 1. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Groman v. Twp. of Manalapan*, 47 F .3d 628, 638 (3d Cir. 1995) ("The color of state law element is a threshold issue; there is no liability under § 1983 for those not acting under color of law."). Whether a private entity is acting under color of state law—*i.e.*, whether the defendant is a state actor—depends on whether there is "such a close nexus between the State and the challenged action' that seemingly private behavior may be fairly treated as that of the State itself." *Leshko v. Servis*, 423 F.3d 337, 347 (3d Cir. 2005) (internal quotations omitted).

To the extent that Singer alleges that Slate Belt caused him to be "falsely arrested" Compl. at 4, he fails to state a claim to relief because Slate Belt is not a state actor.[3] Singer does

---

[3]     Singer's Complaint includes a Defendant named "Saber Healthcare Group," which may be the parent company of Slate Belt. *See* Saber Health, *Slate Belt Health & Rehabilitation Ctr.*, https://saberhealth.com/location/slate-belt-health-rehabilitation-center (last visited January 14, 2026). Singer makes no allegations against this entity and, in any event, any claims against it would fail for the reasons discussed in relation to Slate Belt.

4

not allege that Slate Belt—which appears to be a private, for-profit entity, in which he was housed through insurance payments—was acting under color of state law. He alleges that some unnamed person at Slate Belt learned that he had an outstanding bench warrant, called the police, and made an unfounded allegation that Singer had threatened someone else. *Id.* "Complaining in person to the police or filing a civilian criminal complaint are not acts of the State; they are acts that anyone can do. Filing a report or a civilian complaint does not transform a private citizen into a State actor." *Sous v. Timpone*, No. 15-7972, 2016 WL 2625325, at *4 (D.N.J. May 9, 2016) (citing *Boyce v. Eggers*, 513 F. Supp. 2d 139, 144–45 (D.N.J. 2007)); *see also Baack v. Rodgers*, No. 14-875, 2014 WL 4632380, at *1, 3 (E.D. Pa. Sept. 17, 2014) (rejecting Section 1983 false arrest claim against a hospital and two of its employees who filed a police report regarding plaintiff's conduct because "reporting suspicious conduct to the police—or answering police questions about that conduct—without more, does not transform the Hospital Defendants into state actors" (citations omitted)); *cf. Yoast v. Pottstown Borough*, 437 F. Supp. 3d 403, 420 (E.D. Pa. 2020) ("Providing false information to the police—even deliberately—does not transform a private party into a state actor."), *aff'd*, No. 22-1960, 2023 WL 4418213 (3d Cir. July 10, 2023).

Even if Singer's bare allegation that he was in "rehab" at Slate Belt is meant to suggest that he was housed there pursuant to a court order, it would still not convert Slate Belt into a state actor. *See Daniels v. Nw. Hum. Servs*, No. 20-1736, 2021 WL 4166285, at *2 (3d Cir. Sept. 14, 2021) (*per curiam*) (affirming dismissal of lawsuit against residential rehabilitation center and its employees where the plaintiff alleged only that "Douglas House is a community residential rehabilitation residence under operation of [Northwestern Human Services] who is from my knowledge integrated working with the City of Philadelphia and its prison institutions and the

state as well.  People from the state jails are often sent to these [residential centers] for programs," which did not convert the facility into a state actor); *Smith v. Alternative Counseling Servs.*, No. 21-76, 2021 WL 492513, at *3 (E.D. Pa. Feb. 10, 2021) (concluding that "a privately run halfway house, its owner, and its employees[] are not subject to liability under § 1983"). Accordingly, Singer has not stated a claim to relief against Slate Belt, and his claims against it are dismissed with prejudice because the Court concludes that amendment of such claims would be futile.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110–11 (3d Cir. 2002).

Singer also names the Northampton County Sheriff's Department as a Defendant, apparently in relation to his arrest.  Claims against a county Sheriff's Department are treated as claims against the county itself.  *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 n.4 (3d Cir. 1997).  "Pennsylvania county offices . . . are treated as municipalities for purposes of *Monell* [*v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658 (1978)]."  *Hatfield v. Berube*, 714 F. App'x. 99, 102 n.1 (3d Cir. 2017) (citing *Mulholland v. Cnty. of Berks*, 706 F.3d 227, 237 (3d Cir. 2013)).  To state a claim for municipal liability, a plaintiff must allege that the defendant's policies or customs caused the alleged constitutional violation.  *See Monell*, 436 U.S. at 694; *see also Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583–84 (3d Cir. 2003).  To satisfy the pleading standard, the plaintiff "must identify [the] custom or policy, and specify what exactly that custom or policy was," *McTernan v. City of York,* 564 F.3d 636, 658 (3d Cir. 2009), and "must also allege that the policy or custom was the 'proximate cause' of his injuries," *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)).

Singer does not allege that any policy or custom of Northampton County resulted in a violation of his rights.  He alleges that an unnamed Sheriff's Deputy arrested him pursuant to a

bench warrant but does not dispute the validity of the warrant.  *See* Compl. at 4.  Accordingly, he does not state a claim for false arrest.  *See Mulholland*, 706 F.3d at 238 n.15 ("It is well-settled that, if there is no violation in the first place, there can be no derivative municipal claim.").  Any claim for false arrest is dismissed with prejudice, as these deficiencies appear to be incurable. *See Tucker v. City of Phila.*, 679 F. Supp. 3d 127, 137–38 (D.N.J. 2023) ("A facially valid warrant generally establishes probable cause for arrest." (citations omitted)).  Any claim for excessive force (based on the pain he experienced during transport where he was unable to move) is dismissed without prejudice because this Court is unable to determine based on the minimal allegations whether an amendment would be futile.  *See Flood v. Schaefer*, 367 F. App'x 315, 319 (3d Cir. 2010) (concluding that an excessive force claim may arise if the police were aware that the arrestee had a severe back injury and handcuffed him in a manner that caused excessive pain and suffering).

Singer also names the Northampton County Prison as a defendant, but it is not a proper defendant in a Section 1983 action.  To the extent that Singer intends to assert a claim for deliberate indifference to his medical needs in violation of the Fourteenth Amendment,[4] he cannot state such a claim against the prison itself, because it is not a "person" under Section 1983.  *See Edwards v. Northampton Cnty.*, 663 F. App'x 132, 136 (3d Cir. 2016) (*per curiam*) (reiterating that Northampton County Prison is not a person under § 1983); *Cephas v. George W. Hill Corr. Facility*, No. 09-6014, 2010 WL 2854149, at *1 (E.D. Pa. July 20, 2010); *Miller v. Curran-Fromhold Corr. Facility*, No. 13-7680, 2014 WL 4055846, at *2 (E.D. Pa. Aug. 13, 2014) (citing *Mitchell v. Chester Cnty. Farms Prison*, 426 F. Supp. 271, 274 (E.D. Pa. 1976)).

---

[4]   Singer was a pretrial detainee so the Fourteenth Amendment, not the Eighth Amendment, applies to his claims of deliberate indifference to serious medical needs.  *See Natale*, 318 F.3d at 581–82.

Singer does not name any individuals as Defendants in relation to his medical needs and alleged injuries.  "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct.") (quoting *Iqbal*, 556 U.S. at 677); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)).  *See Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

Accordingly, Singer fails to state a claim to relief for any constitutional violations. Mindful of his pro se status, the Court gives Singer an opportunity to file an amended complaint as to his allegations regarding deliberate indifference to his medical needs and excessive force. Should Singer file an amended complaint, he should consider that he must allege the personal involvement of any individual who purportedly violated his rights, even if he can only identify such individuals as John Doe or Jane Doe.

      **B.**      **Claims under the ADA**

Singer also asserts that the Northampton County Prison violated his rights under the ADA because he "was denied any medical assessment upon entering the prison and refused proper medical devices such as a walker or wheelchair."  Compl. at 7.  To allege a plausible violation of Title II of the ADA, a plaintiff must assert that (1) he is a "qualified individual with a disability;" (2) he is being excluded from participation in or being denied the benefits of some "services, programs, or activities," by reason of his disability; and (3) the entity which provides

the service, program or activity is a public entity. *See, e.g., Layton v. Elder*, 143 F.3d 469, 472 (8th Cir. 1998); *Bowers v. Nat'l Coll. Athletic Ass'n*, 9 F. Supp. 2d 460, 475 (D.N.J. 1998); *Adelman v. Dunmire*, No. 95-4039, 1997 WL 164240, at *1 (E.D. Pa. Mar. 28, 1997). "[T]he proper defendant in a Title II claim is the public entity or an official acting in his official capacity." *Williams v. Wetzel*, No. 21-1248, 2021 WL 12306677, at *2 n.2 (E.D. Pa. Apr. 1, 2021), *aff'd sub nom. Williams v. Sec'y Pa. Dep't of Corr.*, 117 F.4th 503 (3d Cir. 2024) The ADA defines "public entity" to include "any department, agency, . . . or other instrumentality of a . . . local government." 42 U.S.C. § 12131(1)(B). Unlike for a § 1983 claim, the Northampton County Prison may be a proper defendant to an ADA claim.

However, Singer's claims under the ADA fail because they lack factual support. To be considered a "qualified individual with a disability" who is protected by the ADA, a plaintiff must allege that he has a "disability" which is defined as "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id*. at § 12102(2)(A). With the passage of the Americans with Disabilities Act Amendments Act ("ADAAA"), Congress declared that "[t]he definition of disability shall be construed in favor of broad coverage of individuals under this Act, to the maximum extent permitted by the terms of this Act." Pub. L. No. 110–325, § 4(A), 122 Stat. 3553, 3555 (2008). Additionally, the ADAAA requires a "less searching analysis" of whether a plaintiff is "substantially limited." *Kravits v. Shinseki*, No. 10–861, 2012 WL 604169, at *6 (W.D. Pa. Feb. 24, 2012).

Singer does not include any facts regarding his disability; he merely asserts in conclusory fashion that he was entitled to a wheelchair or a walker but was not provided with either, leading to his injuries. *See* Compl. at 4–7. Singer's Complaint does not state a claim for relief. *See Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) ("A plaintiff cannot survive dismissal just by alleging the conclusion to an ultimate legal issue."). "Discrimination under the ADA . . . includes failing to make reasonable accommodations for a plaintiff's disabilities." *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999); *see also Tennessee v. Lane*, 541 U.S. 509, 531 (2004) (noting that failure to accommodate a disability "will often have the same practical effect as outright exclusion" from a public entity's programs and services). However, absent any facts about Singer's disability and what accommodations he required, the Court cannot conclude that there was any plausible ADA violation.

Moreover, Singer does not seek injunctive relief to fix any alleged ADA violations but seeks only money damages for past injuries. Compl. at 7. Money damages are not available under the ADA absent a showing of intentional discrimination. *See Haberle v. Troxell*, 885 F.3d 170, 181 (3d Cir. 2018)). "To prove intentional discrimination, an ADA claimant must prove at least deliberate indifference, and to plead deliberate indifference, a claimant must allege (1) knowledge that a federally protected right is substantially likely to be violated and (2) failure to act despite that knowledge." *Id.* (cleaned up). A plaintiff can plead deliberate indifference two ways: "first, by alleging facts suggesting that the existing policies caused a failure to adequately respond to a pattern of past occurrences of injuries like the plaintiffs,' or, second, by alleging facts indicating that [plaintiff] could prove that the risk of cognizable harm was so great and so obvious that the risk and the failure to respond will alone support finding deliberate

indifference." *Id.* (internal quotation marks and ellipses deleted).  Singer's claim fails due to the absence of facts about his disability or required accommodations.

## IV.  CONCLUSION

For the foregoing reasons, the Court grants Singer leave to proceed *in forma pauperis* and dismisses his Complaint for failure to state a claim, pursuant to 28 U.S.C. § 1915.  Singer may file an amended complaint as to his ADA claims, excessive force claim, and Fourteenth Amendment claims for deliberate indifference to his medical needs.

A separate order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge