UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

CLAUDE E. SINGER,                           :
    Plaintiff,                            :
                                            :
    v.                                    :        No. 5:25-cv-6754
                                            :
NORTHAMPTON COUNTY                           :
PRISON, *et al.*,                           :
    Defendants.                           :

**MEMORANDUM**

**Joseph F. Leeson, Jr.**                                          **May 27, 2026**
**United States District Judge**

    *Pro se* plaintiff Claude E. Singer commenced this civil action by filing a Complaint, ECF No. 1 ("Compl."), asserting claims pursuant to 42 U.S.C. § 1983 and the Americans with Disabilities Act ("ADA"). In a prior Memorandum and Order, the Court granted Singer leave to proceed *in forma pauperis* and dismissed his Complaint on statutory screening pursuant to 28 U.S.C. § 1915. *See* ECF Nos. 10, 11. Singer then filed his First Amended Complaint ("FAC"). *See* ECF No. 12. The Court screened and dismissed the FAC and gave Singer another opportunity to amend. *See* ECF Nos. 14, 15. Currently before the Court is Singer's Second Amended Complaint ("SAC"). *See* ECF No. 16. For the following reasons, the Court will dismiss the SAC with prejudice.

I.    **FACTUAL ALLEGATIONS**[1]

    In Singer's initial Complaint, he alleged that he was arrested at a rehabilitation facility

---

[1]    The facts set forth in this Memorandum are taken from the SAC. *See* ECF No. 16. The Court adopts the pagination assigned to all filings by the CM/ECF docketing system.

1
052726

and taken to the Northampton County Prison ("NCP") on January 1, 2025. *See* Compl. at 4-5. The Court dismissed claims regarding his arrest and arrival at NCP for failure to state a claim, largely because he had not named a proper defendant for a § 1983 claim or included sufficient facts to support an ADA claim. *See* ECF Nos. 10, 11. The FAC included even fewer facts,[2] so it was dismissed as well, and the Court explained again that Singer had to describe with specific facts what medical condition or disability went untreated or unaccommodated. *See* ECF No. 14 at 6-8 (citing, *inter alia*, *Thomas v. City of Harrisburg*, 88 F.4th 275, 281 (3d Cir. 2023); *Haberle v. Troxell*, 885 F.3d 170, 181 (3d Cir. 2018)).

In the SAC, Singer names three Defendants: "John Doe Corrections Officer," "Jane Doe Corrections Officer," and "John Doe Corrections Officer 2nd Shift." SAC at 2-3. He asserts that on January 1, 2025, "after supper time," he fell in his cell and "called for a C[.]O[.] but no one came for a long time and [he] laid in a large pool of blood," until "they called paramedics and [he] passed out and do[es]n't remember anything after that." *Id.* at 4-5. He states that his cell was a "non-handicap cell," and that he had "no walker or wheelchair." *Id.* at 3. He alleges that "Louran [sic] was told to put [him] in a non-handicap cell," and "they was [sic] ordered to put [him] in a non-handicap cell." *Id.* at 4. Singer asserts that he received six stitches in his head and "lost [his] hearing in his left ear," he was taken to Lehigh Valley Medical Center, and then "went back to [NCP] medical housing non-handicap cell." *Id.* at 5.

Singer further alleges that, two days later, while using the bathroom, his "right leg gave out and [he] fell into [his] wheelchair. The arm rest hit [his] left arm pit," which later "started to turn black and blue." *Id.* at 6. He "didn't have any handicap rails in [his] cell," and after he

---

[2]     Singer's original Complaint and FAC pleaded different dates on which the events occurred, so the Court explained the applicable statutes of limitations why the FAC asserted untimely claims. *See* ECF No. 14 at 4-5, 7.

"wrote a grievance[,] they gave [him] a handicap toilet seat to sit on top of the toilet." *Id.* Singer asserts that when his arm pit continued to bother him, he was sent back to the Lehigh Valley Medical Center for a CAT scan that revealed a torn rotator cuff. *See id.* He then saw a "bone doctor" who told him about the tear, but "they never did nothing about it." *Id.*

Singer asserts "medical negligence" because there were "no handicap devices or any kind of support to help [him] from falling." *Id.* at 7. He seeks $250,000 in damages. *See id.* at 5.

## II. STANDARD OF REVIEW

Because the Court granted Singer leave to proceed *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the SAC if it fails to state a claim. The Court applies the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether a complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). At the screening stage, the Court will accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in Singer's favor, and ask only whether the complaint contains facts sufficient to state a plausible claim. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *See Iqbal*, 556 U.S. at 678; *see also Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) ("A plaintiff cannot survive dismissal just by alleging the conclusion to an ultimate legal issue.").

As Singer is proceeding *pro se*, the Court construes his allegations liberally. *See Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239,

244-45 (3d Cir. 2013)).  The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* (quoting *Mala*, 704 F. 3d at 244).  However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F. 3d at 245).  An unrepresented litigant "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants." *Id.*

## III.    DISCUSSION

On his third attempt, Singer has still not included enough facts to support a claim to relief based on his medical treatment.[3]  To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs.[4]  *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994).  A

---

[3]     In the SAC, Singer again checks the boxes on his form complaint indicating that he is suing the John and Jane Does in their official capacities.  *See* SAC at 2.  Claims against municipal employees, such as the unidentified Defendants here, named in their official capacities are indistinguishable from claims against the governmental entity that employs the Defendants, here presumably Northampton County.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n.55 (1978)).  "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."  *Id.*  Because Singer does not attempt to allege an official capacity claim, *see Monell*, 436 U.S. at 694 (holding that, to state a claim for municipal liability, a plaintiff must allege that the defendant's policies or customs caused the alleged constitutional violation), the Court will liberally construe the SAC to assert a claim against each of the Defendants in his or her individual capacity.  *See Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020) ("To determine whether a plaintiff sued state officials in their official capacity, we first look to the complaints and the course of proceedings." (citations omitted)); *Coward v. City of Phila.*, No. 21-1619, 2021 WL 4169422, at *3 (E.D. Pa. Sept. 13, 2021) (permitting claim against defendant in his individual capacity to proceed event though "[plaintiff] did not check the box indicating a desire to sue [that defendant] in his individual capacity" where the allegations clearly sought relief based on the defendant's conduct).

[4]     In two prior memoranda, the Court construed Singer's claims as having arisen while he was a pretrial detainee and thus applied the Fourteenth Amendment to his claims for deliberate indifference to his medical needs.  *See* ECF No. 10 at 7 n.4; ECF No. 14 at 5 n.4 (both citing *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003)).  Singer now pleads that he was a convicted and sentenced state prisoner at the time of the events.  *See* SAC at 4.

prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.  "A serious medical need is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a layperson would easily recognize the necessity for a doctor's attention." *Thomas v. City of Harrisburg*, 88 F.4th 275, 281 (3d Cir. 2023) (cleaned up).  Deliberate indifference is properly alleged "where (1) prison authorities deny reasonable requests for medical treatment, (2) knowledge of the need for medical care is accompanied by the intentional refusal to provide it, (3) necessary medical treatment is delayed for non-medical reasons, [or] (4) prison authorities prevent an inmate from receiving recommended treatment for serious medical needs." *Montanez v. Price*, 154 F.4th 127, 141 (3d Cir. 2025) (citation omitted).  "[P]rison officials may not 'deny reasonable requests for medical treatment . . . when such denial exposes the inmate to undue suffering or the threat of tangible residual injury.'" *Durham v. Kelley*, 82 F.4th 217, 230 (3d Cir. 2023) (quoting *Palakovic v. Wetzel*, 854 F.3d 209, 227 (3d Cir. 2017)).

Singer's SAC again includes only vague allegations that he was placed in a non-handicap cell and that he fell and hit his head as a result of not having assistance to stand and walk.  But again, "[he] does not explain why he needed walking assistance while in the cell[, f]or example,

---

Regardless, the standard for claims related to a prisoner's medical needs is essentially the same under either the Eighth Amendment or Fourteenth Amendment for purposes of the analysis.  *See Moore v. Luffey*, 767 F. App'x 335, 340 n.2 (3d Cir. 2019) (citing *Natale*, 318 F.3d at 581) ("[T]he Fourteenth Amendment affords pretrial detainees protections at least as great as the Eighth Amendment protections available to a convicted prisoner."); *Dates v. Winters*, No. 22-2253, 2022 WL 17958626, at *2 n.3 (3d Cir. Dec. 27, 2022) (*per curiam*) ("We have found no reason in previous cases, however, to analyze pretrial detainees' claims of inadequate medical care under something other than the deliberate indifference standard." (citing *Natale*, 318 F.3d at 581-82 & n.5)).

he does not specify what diagnosis he had received or what condition he was in at the time that would require assisted walking, and he does not plead facts to suggest that such a need would have been obvious to the defendants." ECF No. 14 at 6-7 (citing *Thomas*, 88 F.4th at 281). Moreover, as to his allegations regarding his subsequent fall, bruising of his arm pit, and diagnosis of a torn rotator cuff, he does not tie these allegations to the behavior of any individual Defendant, referring only to "they." SAC at 6. He also states that he was at some point provided with a wheelchair and handicap toilet seat, and that he was referred for external medical treatment, but does not state allege facts to support a claim that the treatment was inadequate. *See id.* At most, as he himself pleads, the conduct he describes might amount to negligence. *See id.* at 5-7. However, "[m]ere negligence, . . . even if it constitutes medical malpractice[,] falls short of deliberate indifference." *Montanez*, 154 F.4th at 141 (citing *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)); *see also Palakovic*, 854 F.3d at 227 ("Allegations of mere negligent treatment or even medical malpractice do not trigger the protections of the Eighth Amendment.") (citation omitted). Accordingly, Singer has failed to state a claim for deliberate indifference to his medical needs.

Finally, it is not clear whether Singer intended to pursue relief under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132 ("Title II" or "ADA"), which he specifically mentioned in his initial Complaint but did not mention in either the FAC or SAC. Liberally construing his allegations, the Court has considered whether he states a valid failure-to-accommodate claim under the ADA and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. ("Section 504" or "RA"). "Both [Title II of] the ADA and the RA require public entities, including state prisons, to provide, in all of their programs, services, and activities, a reasonable accommodation to individuals with disabilities." *Furgess v. Pa. Dep't of Corr.*, 933 F.3d 285,

6

287 (3d Cir. 2019); *see also Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210-12 (1998) (noting the phrase "services, programs, or activities" in Title II of the ADA includes recreational, medical, educational, and vocational prison programs).  Courts often address Title II and Section 504 claims "in the same breath, construing the provisions of both statutes in light of their close similarity of language and purpose," since "the scope of protection afforded under both statutes, *i.e.*, the general prohibition against discrimination, is materially the same."[5] *Berardelli v. Allied Servs. Inst. of Rehab. Med.*, 900 F.3d 104, 117 (3d Cir. 2018) (cleaned up).

To state a plausible claim under either the ADA or the RA, a plaintiff "must allege that he is a qualified individual with a disability, who was precluded from participating in a program, service, or activity, or otherwise was subject to discrimination, by reason of his disability." *Furgess*, 933 F.3d at 288-89.  The element of discrimination by reason of disability can be met if a defendant failed to provide the plaintiff with reasonable accommodations for a disability. *Montanez*, 154 F.4th at 148 (citing *Haberle*, 885 F.3d at 179-80).  "The duty to accommodate is triggered when a disabled person's need for an accommodation becomes known, either because (1) he requests an accommodation or (2) his disability and concomitant need for an accommodation are open and apparent." *Montanez*, 154 F.4th at 148 (citations omitted).  If a

---

[5]    Although "the substantive standards for determining liability" under the RA and the ADA "are the same," *see Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 275 (3d Cir. 2014) (citation omitted), a party who seeks to proceed under Section 504 "must show that the allegedly discriminating entity receives federal funding," *McDonald-Witherspoon v. City of Phila.*, 481 F. Supp. 3d 424, 439 (E.D. Pa. 2020) (citation omitted), aff'd, No. 21-1019, 2021 WL 6101246 (3d Cir. Dec. 21, 2021); *see also* 29 U.S.C. § 794(a) ("No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.") .

plaintiff seeks compensatory damages, he "must also show intentional discrimination under a deliberate indifference standard." *Furgess*, 933 F.3d at 289 (footnote omitted).

To plausibly allege that he is a "qualified individual with a disability," a plaintiff must provide facts to show that he has a "disability," defined as "any physical or mental impairment that substantially limits one or more major life activities, which includes, among other things, caring for oneself, sleeping, walking, standing, and the operation of a major bodily function, such as functions of the bladder." *Montanez*, 154 F.4th at 146-48 (cleaned up) (citing 42 U.S.C. §§ 12102(1)(A), 12102(2)(A)-(B)). As the Court has twice before explained to Singer, he must plead what his impairment is and how he asked for it to be accommodated to state an ADA claim. *See* ECF No. 10 at 8-11; ECF No. 14 at 7-8. Once again, Singer does not describe why he needs assistance walking or standing, or why any Defendant knew or should have known of that need. Despite the Court's description of this deficiency in his prior pleadings, Singer's SAC does not include facts that describe either his disability or any accommodation he asked for, so he has not stated a claim for relief under either the ADA or the RA.

## IV.   CONCLUSION

For the foregoing reasons, the Court will dismiss Singer's SAC for failure to state a claim, pursuant to 28 U.S.C. § 1915. Since the Court has already given Singer two opportunities to cure the defects in his complaints and has been unable to do so, the Court concludes that further amendment would be futile. *See Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (amendment by pro se litigant would be futile when litigant "already had two chances to tell his story" ); *see also Gowans v. Axsom*, No. 25-2070, 2025 WL 2848907, at *2 (3d Cir. Oct. 8, 2025) (*per curiam*) (affirming dismissal where the district court

instructed the plaintiff about the deficiencies in his complaint and gave leave to amend but the plaintiff's subsequent filing "did not heed the Court's direction" (citation omitted)).

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*

JOSEPH F. LEESON, JR.
United States District Judge

052726